UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND COMMISSION
FOR HUMAN RIGHTS

v.  CA No. 13-445M

NOREEN D. GRAUL, Alias,
PAUL T. DRISCOLL, Alias,
B.M. III, Limited Partnership, Alias,
B.M. II, Limited Partnership, Alias,
B.M.II Corporation, Alias,
Briarwood Meadows Limited Partnership, Alias,

## SECOND AMENDED COMPLAINT

1. The Rhode Island Commission for Human Rights (the "Commission") brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, §§ 42 U.S.C. 3601, *et seq.*, and Rhode Island General Laws, §§ 34-37-1 *et seq.* (together collectively referred to as the "Fair Housing Acts"). It is brought on behalf of Complainants Mardea Caulcrick-Grimes, Ernest Grimes, Janjay Grimes (the "Grimes family"), and Allison Coté, a tester, pursuant to 42 U.S.C. § 3612(o).

### JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3612(o).

3. Venue is in the District of Rhode Island under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 3612(o), in that the events, acts or omissions giving rise to this action occurred in this district.



## PARTIES

4. Plaintiff is the Commission. The Commission brings this action on behalf of the Complainant Grimes family and on behalf of the Complainant tester, all of whom were residents of the District of Rhode Island at all times relevant to this action.

5. At all times relevant to the Complaint, defendants Briarwood Meadows Limited Partnership, B.M. II, Limited Partnership and B.M. III, Limited Partnership, owned the property known as "Briarwood Meadows" (the "subject property") located at 940 Quaker Lane, Warwick, Rhode Island. Briarwood Meadows Limited Partnership is a foreign limited partnership and B.M. II, Limited Partnership and B.M. III, Limited Partnership are domestic limited partnerships.

6. At all times relevant to the Complaint, defendant Noreen D. Graul was the limited partner of Briarwood Meadows Limited Partnership which had merged with B.M. II, Limited Partnership (with no declared general or limited partner), all of which have their principal place of business at 940 Quaker Lane, Warwick, Rhode Island.

7. At all times relevant to the Complaint, defendants Noreen D. Graul and Paul T. Driscoll were the sole officers of B.M III Corporation of Rhode Island and B.M.II Corporation, both of which have their principal place of business at 940 Quaker Lane, Warwick, Rhode Island.

8. At all times relevant to the Complaint, defendant Noreen D. Graul was a resident of Rhode Island and defendant Paul T. Driscoll was a resident of the Commonwealth of Massachusetts.

9. Upon affirmation and belief, at all times relevant to the Complaint, B.M.II Corporation managed the subject property.

10. Upon affirmation and belief, at all times relevant to the Complaint, B.M III Corporation of Rhode Island and B.M.II Corporation established the occupancy standard for the subject property, and together with their officers, exercised authority concerning the occupancy standards of the subject property.

11. The subject property is a "dwelling" within the meaning of the Fair Housing Acts. The subject property is an apartment complex consisting of 552 what defendants classify as one and two-bedroom units. Defendants' one-bedroom units contain a total of 700 square feet of living space, which includes an area marked on plans as a "bedroom" with 154 square feet of living space and an area marked on plans as a "dining area" with over 80 square feet of living space, both of which areas qualified under law to be used as a bedroom.

## FACTUAL ALLEGATIONS

12. The Grimes family were residents of Briarwood Meadows in defendants' one-bedroom unit pursuant to a written lease that ran from October 30, 2010 through October 29, 2011. That lease was extended, in writing, for an additional six months, from October 30, 2011 through April 29, 2012.

13. The written lease described in paragraph 12, a copy of the first page of which is attached hereto as Exhibit A, lists the owner of the premises as "Briarwood Meadows". No entity nor fictitious name is registered with the Rhode Island Secretary of State as "Briarwood Meadows".

14. On February 1, 2012 Janjay Grimes was born to Mardea Caulcrick-Grimes and Ernest Grimes.

15. On March 12, 2012, defendant Noreen D. Graul, acting on behalf of the defendants, notified the Grimes family in writing that the

defendants' unwritten occupancy policy limits occupancy to two occupants in what defendants classify as a one-bedroom unit. Defendant Noreen D. Graul further informed the Grimes family that they must vacate the one-bedroom unit they were then renting upon the renewal date of their lease (April, 2012), pay a "premium amount" for a six month extension of their lease or move into defendants' two-bedroom unit, all because their newborn child counted as the third occupant in defendants' one-bedroom unit.

16. Defendant Noreen D. Graul repeatedly informed the Grimes family in writing that their newborn child was an occupant who would be counted as such, and therefore, her presence in defendants' one-bedroom unit would violate the defendants' occupancy policy.

17. As a result of the actions of the defendants, Mardea Caulcrick-Grimes contacted the Boston Fair Housing and Equal Opportunity Office of the United States Department of Housing and Urban Development ("HUD").

18. HUD drafted a charge for the Grimes family and pursuant to a Memorandum of Understanding between HUD and the Commission, HUD referred the matter for investigation to the Commission, HUD's designated Fair Housing Assistance Program ("FHAP") agency in Rhode Island.

19. The Commission tested the defendants' occupancy policy by arranging for a tester to visit the premises on April 27, 2012.

20. The tester told the agents of the defendants that she, her husband and their newborn child wanted to rent a one or two-bedroom unit at Briarwood Meadows.

21. The agent of the defendants informed the tester that she and her family would be prohibited from renting one of defendants' one-bedroom unit as their newborn child would be counted as an occupant of the unit and his presence would violate the

defendants' occupancy policy of prohibiting more than two occupants in one of their one-bedroom units.

22. On May 8, 2012, Mardea Caulcrick-Grimes filed a charge against some of the defendants with the Commission, alleging that they had discriminated against her and her family with respect to terms and conditions of rental because of familial status.

23. As applied to the Grimes family and the tester's family, defendants' policy of prohibiting more than two occupants in a one-bedroom unit is more restrictive than the State of Rhode Island Housing Maintenance and Occupancy Code which provides in § 45-24.3-5(27) that "'Occupant' means . . . any person over one year of age. . ." and provides in § 45-24.3-11(2) provides that for two adults in the bedroom only 120 feet of living space is required.

24. As applied to the Grimes family and the tester's family, defendants' policy of prohibiting more than two occupants in a one-bedroom unit is more restrictive than the City of Warwick, Minimum Housing Code which provides in § 26-203 that ". . . every room occupied for sleeping purposes by more than one person shall contain at least 40 square feet of floorspace [sic] for each occupant thereof".

25. According to the 2012 United States census, there were 35,480 households in Warwick, of which 8,783 were households of families with children which resulted in an average family size of 2.91.

26. Given the overall size and configuration of defendants' 700 square foot "one-bedroom" unit at the subject property, (including the extra room listed as a "dining area"), and the local and state governmental occupancy restrictions, the occupancy limit imposed by the defendants unreasonably limited the ability of families with children to rent one of defendants' one-bedroom units in the subject property.

27. Given the configuration of defendants' "one-bedroom" unit's extra room listed as a "dining area", and the local and state governmental occupancy restrictions, the occupancy limit imposed by the defendants unreasonably limited the ability of families with children to rent one of defendants' one-bedroom units in the subject property.

### COMMISSION ADMINISTRATIVE PROCEEDING

28. Mardea Caulcrick-Grimes filed a timely Charge with the Commission on or about May 8, 2012 claiming that the defendants' occupancy policy discriminated against her and her family based on familial status in violation of the Fair Housing Acts.

29. The Commission conducted an investigation of the Charge, including conducting a Pre-Determination Conference on May 24, 2012. The Commission attempted conciliation without success. Based on the information gathered in the investigation, Commission Chairman John B. Susa, in his capacity as Preliminary Investigating Commissioner, determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred.

30. The Commission notified the parties of the determination and thereafter issued a Complaint of discrimination on February 6, 2013, complaining that some of the named defendants had engaged in discriminatory practices based on familial status, in violation of the Fair Housing Acts.

31. On February 21, 2013, the defendants made a timely election to have the claims asserted in the Complaint resolved in a civil action as provided in the Fair Housing Acts.

32. A Complaint was brought by the Commission on behalf of the Grimes family in Rhode Island state court.

## VIOLATIONS OF THE FAIR HOUSING ACTS

33. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32, above.
34. By the actions set forth above, the defendants have discriminated against the Grimes family and Allison Coté by changing the terms, conditions and privileges of housing, and by making, printing or publishing, or causing to be made, printed, or published a notice or statement with respect to the rental of a dwelling that indicates any limitation or discrimination based on familial status and by otherwise making unavailable or denying a dwelling to any person because of familial status.
35. As a result of the conduct or actions of the defendants, the Grimes family suffered damages, including a lost housing opportunity, economic loss, inconvenience and emotional distress. The members of the Grimes family are aggrieved persons within the meaning of the Fair Housing Acts.
36. As a result of the conduct or actions of the defendants, tester Allison Coté suffered inconvenience and emotional distress.
37. As a result of the conduct or actions of the defendants, the Commission has suffered economic loss as a result of the frustration of its legislative purpose.

PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter an order that:

a. Declares that defendants' discriminatory practices, as set forth above, constitute a violation of the Fair Housing Acts; and,

b. Enjoins the defendants, their agents, employees, successors, partners, and all other persons in active concert or participation with any of them from discriminating on the basis of familial status, in violation of the Fair Housing Acts; and,

c. Enjoins the defendants, their agents, employees, successors, partners, and all other persons in active concert or participation with any of them from failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the complainants to the position they would have been in but for the discriminatory conduct; and,

d. Enjoins the defendants, their agents, employees, successors, partners, and all other persons in active concert or participation with any of them from failing or refusing to take affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful practices, pursuant to the Fair Housing Acts.; and,

e. Awards money damages and punitive damages to the Complainants, pursuant to the Fair Housing Acts; and,

f. Awards reasonable counsel fees to the Commission, pursuant to the Fair Housing Acts; and,

g.     Awards such additional relief as the interests of justice may require.

/s/ Francis A. Gaschen
------
Francis A. Gaschen, Esquire #1678
180 Westminster Street, Third Floor
Providence, RI 02903
401 222.4477
401 222.2616 (fax)
fgaschen@richr.ri.gov

*Attorney for plaintiff, Rhode Island Commission for Human Rights*